IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES ALONZO POWELL,                )
                                    )
              Petitioner,           )
                                    )
        v.                          )    1:10CV793
                                    )
ALVIN W. KELLER, JR., et al.,       )
                                    )
              Respondents.          )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On September 22, 1978, in the Superior Court of Durham County, a jury found Petitioner guilty of first-degree burglary, second-degree rape, two counts of assault inflicting serious injury, two counts of felonious larceny, and one count of breaking and entering for conduct occurring in April and May 1978. State v. Powell, 297 N.C. 419, 420-22, 255 S.E.2d 154, 155-56 (1979).[1] The state trial court sentenced Petitioner to life in prison. Id.[2] Petitioner does not contest his convictions or sentence, but instead challenges the State's refusal to apply good time, gain time, and

---

[1] On direct appeal, the North Carolina Court of Appeals vacated Petitioner's burglary conviction and ordered a new trial. Powell, 297 N.C. at 424, 255 S.E.2d at 157. The record before the Court does not reflect that Petitioner was retried.

[2] In its opinion vacating Petitioner's burglary conviction and corresponding life sentence, the North Carolina Court of Appeals indicated that the state trial court sentenced Petitioner to 40 years in prison on the second-degree rape conviction. See Powell, 297 N.C. at 422, 255 S.E.2d at 156. However, Department of Public Safety records reflect that Petitioner is serving a life sentence on that rape conviction. (Docket Entry 1, Ex. 3 at 2.) The Court need not resolve this conflict, as neither party disputes that Petitioner is currently serving a life sentence for his rape conviction.

merit time credits ("good time credits") to reduce his sentence. (See Docket Entry 1 at 2-4.)[3]

In North Carolina, for defendants convicted of crimes occurring "between 8 April 1974 and 30 June 1978 [who] were sentenced to life imprisonment . . ., the controlling statute provided that 'aسentence of life imprisonment shall be considered as a sentence of imprisonment for a term of 80 years in the state's prison.'" Jones v. Keller, 364 N.C. 249, 252, 698 S.E.2d 49, 53 (2010) (citing N.C. Gen. Stat. § 14-2) (internal brackets omitted). For decades, North Carolina prison officials "interpreted a life sentence imposed under that statute to be an indeterminate sentence . . . ." Id. The North Carolina Court of Appeals, however, eventually rejected the view that the 80-year figure in the relevant statute applied only to the assessment of parole eligibility. See State v. Bowden, 193 N.C. App. 597, 668 S.E.2d 107 (2008). The Bowden decision produced questions for North Carolina prison officials concerning whether good time credits applied to reduce such "80-year life sentences"; indeed, at one point, North Carolina prison officials tentatively advised Petitioner that he would be released. (Docket Entry 1 at 8-9, Exs. 8, 9, 13.) However, North Carolina prison officials quickly halted

---

[3] Petitioner is also serving another life sentence for first-degree murder and first-degree rape convictions in Cumberland County. State v. Powell, 299 N.C. 95, 261 S.E.2d 115 (1980). Petitioner filed a federal habeas petition in the United States District Court for the Eastern District of North Carolina raising the same arguments raised in the instant Petition. The Eastern District denied his petition, along with the petitions of three other, similarly-situated inmates, on July 1, 2011. Baggett v. Keller, 796 F. Supp. 2d 718 (E.D.N.C. 2011), appeal dismissed, 474 F. App'x 176 (4th Cir. 2012).

-2-

the release and later issued a final determination that the good time credits would not reduce 80-year life sentences such as Petitioner's. (Id. at 10-14, Exs. 14-19.) Petitioner now challenges that decision.

### **Petitioner's Claims**

Petitioner raises four claims for relief. First, Petitioner asserts that he "earned sentence reduction credits without reservation or restriction." (Docket Entry 1 at 29.) Second, Petitioner contends that he "has a constitutionally-protected liberty interest in his sentence reduction credits and was deprived of his credits without Due Process of Law." (Id. at 38.) Third, Petitioner asserts that the "[r]etroactive summary revocation of [his] sentence reduction credits violates the *Ex Post Facto* Clause" of the United States Constitution. (Id. at 41.) Finally, Petitioner contents that the "refusal to credit [his] sentence reduction credits to his unconditional release date infringes upon his entitlement to fair notice of the law." (Id. at 48.) Respondents have moved for summary judgment as to all of these claims. (Docket Entry 9.)

### **Exhaustion of State Remedies**

Petitioner did not challenge in the state courts the final determination by North Carolina prison officials regarding these matters before filing his instant Petition in this Court. However, another similarly situated inmate litigated the issue in state court and ultimately lost. See Jones, 364 N.C. at 251-60, 698 S.E.2d at 52-58. Petitioner maintains that he was not required to

-3-

exhaust his state court remedies "because, after the North Carolina Supreme Court's ruling in the identical case of *Jones v. Keller*, such an endeavor would be futile."  (Docket Entry 1 at 25.) Petitioner nonetheless did file a state habeas corpus petition at the same time that he filed his Petition in this Court.  (Id. at 28; see also Docket Entry 10, Ex. 7.)  The North Carolina Supreme Court later summarily denied that petition (Docket Entry 10, Ex. 12), which means that Petitioner exhausted his state court remedies (Docket Entry 10 at 9).

## Statute of Limitations

Respondents initially argue that Petitioner submitted his instant Petition after the expiration of the deadline for filing set out in 28 U.S.C. § 2244(d)(1).  However, in addressing this issue in a case raising claims virtually identical to Petitioner's, the United States Court of Appeals for the Fourth Circuit recently stated that "inasmuch as the statute of limitations question is arguably more difficult than the merits issues, we are content to assume without deciding that [the petitioner's] claims are not time-barred and proceed with our analysis of their merits." Waddell v. Department of Corr., 680 F.3d 384, 394 (4th Cir.) (citing Bauberger v. Haynes, 632 F.3d 100, 103 (4th Cir. 2011)), cert denied, ___ U.S. ___, 133 S. Ct. 451 (2012).  Because, as discussed below, the decision in Waddell largely controls the

present case, this Recommendation adopts the same approach and proceeds to discuss the merits of Petitioner's claims.[4]

## **Merits of Petitioner's Claims**

Because the state courts adjudicated Petitioner's claims on their merits in his state court habeas petition, this Court must apply the deferential standards of 28 U.S.C. § 2254(d). See Waddell, 690 F.3d at 394. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless Petitioner shows that the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (holding that "petitioner carries the burden" under § 2254(d)). A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of

---

[4] Given the development of the facts underlying Petitioner's claims during the litigation of the Bowden and Jones cases and because of the impact of the decision in Waddell, no need exists for an evidentiary hearing.

the particular state prisoner's case." Id. at 407. "Unreasonable" does not mean simply "incorrect" or "erroneous" and the Court must judge the reasonableness of the state court's decision from an objective, rather than subjective, standpoint. Id. at 409-11. Finally, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Turning to Petitioner's claim that he earned his good time credits "without reservation or restriction," the North Carolina Supreme Court has ruled otherwise under state law. Jones, 364 N.C. at 253-56, 698 S.E.2d at 53-55. As the Fourth Circuit pointed out, federal courts review habeas "claims for violations of federal law only, inasmuch as 'federal habeas corpus relief does not lie for errors of state law.'" Waddell, 680 F.3d at 394 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Therefore, this Court is "not entitled to decide whether the [] actions [of North Carolina prison officials] fall within the statutory authority delegated to [them] under North Carolina law, but only whether [their] refusal to apply [] good time credits to reduce [an 80-year] life sentence violated the due process clause or the ex post facto clause of the Constitution." Id. This holding in Waddell defeats Petitioner's first claim for relief and focuses the discussion on his second and third claims.

Unfortunately for Petitioner, Waddell also squarely rejects Petitioner's due process and ex post facto claims. As to the due process claim, the Fourth Circuit held that:

> Supreme Court precedent speaks directly to the due process issue as it relates to good time credits. The Court held in 1974 that a prisoner's interest in good time credits has substance, and that due process requires that such a right not be "arbitrarily abrogated." See Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Thus, Wolff recognized that after a prisoner has earned good time credits under a state statute that awards mandatory sentence reductions for good behavior, he possesses a liberty interest in a reduced sentence, which cannot be revoked in the absence of minimum procedural guarantees. Id. at 556. In [this] case, however, there was nothing arbitrary about the [] failure to apply good time credits to reduce [the petitioner's] life sentence, and nothing that was rightfully his was abrogated. As the Jones decision explains, [North Carolina prison officials] ha[ve] never used good time credits for the purpose of reducing a life sentence. See Jones, 698 S.E.2d at 56–57. On this record, [North Carolina prison officials] administered good time credits for the purpose of calculating parole eligibility dates, determining custody grades, and, in the event a life sentence was commuted by the Governor to a term of years, to reduce the sentence accordingly. Because good time credits were never used for the purpose of achieving the relief [the petitioner] seeks, his right to use such credits in that manner could not be abrogated. See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 11–12 (1979) (observing "difference between losing what one has and not getting what one wants").
>
> Put simply, the [] practice of applying earned good time credits for certain identified purposes, but not for the purpose sought by [the petitioner], does not give rise to a liberty interest protected by the Due Process Clause. See Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458 (1981) (emphasizing that common practice of Board of Prisons was insufficient to create liberty interest where statute neither required nor prohibited such practice). In other words, as explained by North Carolina's highest court in the Jones decision, "[b]ecause [the petitioner] has received the awards to which he is entitled for the purposes for which he is entitled, he has not been denied credits in which he has a constitutionally protected liberty interest." Jones, 698 S.E.2d at 56. As a result, [the petitioner's] liberty interest in good time credits has been sufficiently recognized. His due process claim therefore fails.

Waddell, 680 F.3d at 394-95 (internal parallel citations omitted).

Similarly, the Fourth Circuit discussed and denied the same ex post facto claim Petitioner presents, stating:

-7-

The ex post facto clause bars a retroactive enactment that increases the punishment for a crime after it has been committed. See Garner v. Jones, 529 U.S. 244, 249 (2000). It is settled that "[t]he prohibition against ex post facto laws, which applies only to penal statutes which disadvantage the offender affected by them, assures that innocent conduct is not made criminal after the fact and that greater punishment is not imposed after the fact." Jones v. Murray, 962 F.2d 302, 309 (4th Cir.1992) (internal quotation marks omitted).

The [] failure to utilize [the petitioner's] good time credits to reduce his life sentence under the eighty-year rule did not result from any statutory or regulatory enactment after [his] first-degree murder offense. [His] argument in this regard is that the [] creation of a distinction between good time credits awarded to prisoners serving terms of years and such credits awarded to prisoners serving life sentences under the eighty-year rule "is a post-hoc rationale designed to undercut the legislature's determination that inmates sentenced under § 14-2 had eighty year terms." Br. of Appellant 19. As we have emphasized, however, [North Carolina prison officials] ha[ve] always treated life sentences and sentences for terms of years differently—regardless of whether a sentence was deemed an eighty-year term under § 14-2. [Their] revision of the release dates of prisoners—such as [the petitioner]—sentenced under the eighty-year rule was simply a correction of its records, and failed to impact on how good time credits were being applied. See Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000) (recognizing that "[a] change in an administrative policy that was in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws"); Stephens v. Thomas, 19 F.3d 498, 500-01 (10th Cir. 1994) (finding no ex post facto violation when department of corrections fixed erroneous internal practices relating to good time credits, even though change disadvantaged certain prisoners).

[The petitioner's] ex post facto claim has no merit because, as the Jones decision explained, no legislative or regulatory enactment ever altered [his] award of good time credits. Put simply, [the petitioner's] sentence has been—and remains—life in prison. His current projected release date was calculated pursuant to a short-lived enactment that deemed a "life sentence" to be eighty years. Such a release date calculation is the product of a legislative enactment and does not guarantee [his] release at any time before [the expiration of his entire

> 80-year sentence]. Although North Carolina law provided for the award of good time credits, it is for [North Carolina prison officials] to determine how those credits are to be applied. See N.C. Gen. Stat. § 148-13.
>
> [The petitioner's] § 2254 claims are therefore simply challenges to the State's interpretations of its own statutes and regulations. Put succinctly, the [State's] obligation to keep track of good time credits for purposes of parole eligibility, custody grade, and commutation, and its decision not to utilize them to reduce the release dates of prisoners sentenced under the eighty-year rule, was recognized in the Jones decision—by the state's highest court—as a reasonable application of [prison officials'] authority to administer sentences. Under [Section 2254(d)], we are only entitled to assess whether the ex post facto ruling of the Jones decision is contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. That inquiry must be, as the district court properly recognized, answered in the negative.

Waddell, 680 F.3d at 395-96 (internal parallel citations omitted).

The Fourth Circuit's opinion in Waddell constitutes binding precedent which requires denial of Petitioner's first three claims. For that reason, the Court should grant Respondents' Motion for Summary Judgment on those claims.

The Fourth Circuit did not directly address Petitioner's fourth claim for relief, his "fair notice" claim, in Waddell. However, the petitioner in Waddell did raise that claim in his habeas petition and the district court's handling of the issue, although not binding precedent, represents persuasive authority. The district court first noted that it had "closely read [the] petitioner's response and [could] find no argument responsive to the respondents' Motion for Summary Judgment on [the] 'fair notice' contention," which meant that the argument "appear[ed] to have been

abandoned under Rule 56." Waddell v. Keller, No. 3:10cv532, 2011 WL 3897725, at *14 (W.D.N.C. Sept. 6, 2011) (unpublished). The same analysis applies in the instant case. (See Docket Entry 10 at 29-31; Docket Entry 13 at 2-21.)

Moreover, the district court in Waddell concluded that any "fair notice" claim merged with the due process and ex post facto claims so that it "was adjudicated in state court in the context of [the petitioner's] due process and ex post facto claims, and such adjudication by the North Carolina Supreme Court resulted in a decision that was a reasonable application of clearly established federal law, as discussed" in conjunction with those claims. Waddell, 2011 WL 3897725, at *15. The same conclusion arises in the instant case as well. Petitioner's "fair notice" claim is so intertwined with his arguments as to his first three claims that it cannot stand as a separate claim. (Docket Entry 1 at 48-55 (discussing fair notice as component of due process and ex post facto protections and asserting that denial of good time credits thus violated state law and those protections).) In sum, Petitioner's fourth claim fails for the same reasons as Petitioner's other claims.

**IT IS THEREFORE RECOMMENDED** that Respondents' Motion for Summary Judgment (Docket Entry 9) be granted, that the Petition

(Docket Entry 1) be denied, and that Judgment be entered dismissing this action.

<pre>
                                    /s/ L. Patrick Auld
                                   L. Patrick Auld
                             United States Magistrate Judge
</pre>

July 17, 2013